Filed 5/21/25  In re B.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E084573 |
| Plaintiff and Respondent, | (Super.Ct.No. J301156) |
| v. | OPINION |
| R.R., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson and Steven A. Mapes, Judges.  Affirmed in part; dismissed in part.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Helena Rho, Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and Appellant R.R. (MGM) appeals from jurisdiction/disposition orders wherein the juvenile court refused to place B.G.[1] (Minor), her granddaughter, in her custody after considering the relative placement preference pursuant to Welfare and Institutions Code section 361.3.[2] Minor was detained from Br.G. (Mother) when she and Minor tested positive for drugs at the time of Minor's birth. MGM requested placement of Minor, but plaintiff and respondent San Bernardino County Children and Family Services (CFS) recommended that the juvenile court deny placement due to CFS's concerns that she had a domestic violence history; a prior history with child protective services; and did not acknowledge Mother's drug use, instead blaming Mother's drug use on Mother's boyfriend. At the jurisdiction/disposition hearing, Mother was granted reunification services and Minor was placed in a foster home. The juvenile court denied placement with MGM after considering the factors in section 361.3.

On appeal, MGM states the trial court erred by denying her the opportunity to be heard at the jurisdiction/disposition hearing regarding placement of Minor with her and to present evidence. MGM also contends the juvenile court prejudicially erred by relieving Mother's counsel at the jurisdiction/disposition hearing without cause or notice to Mother. She contends she has standing to raise the issue on Mother's behalf.

---

[1] Minor was given a name during the course of the proceedings; however, we use the initials B.G. (for "Baby Girl") as those initials appear in the record and briefs.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

# FACTUAL AND PROCEDURAL HISTORY[3]

A.      SECTION 300 PETITION AND DETENTION

Minor was born in May 2024.  Minor's father was alleged to be J.N. (Father).  It was reported that Mother had given birth to Minor in a driveway; she had received no prenatal care.  Mother and Minor were taken to the hospital by ambulance.  Mother tested positive for fentanyl and amphetamine.  Minor tested positive for methamphetamine and fentanyl.  Minor exhibited withdrawal symptoms including high-pitched crying, tremors, and irritability.  Minor was transferred to the neonatal intensive care unit (NICU).  Mother reported the use of fentanyl one week prior to Minor's birth and admitted to using methamphetamine during her pregnancy.  Father reported being a "historical drug user" but denied current drug use.  During the hospital stay, Mother and Father (Parents) left Minor unattended while they went into the restroom together.

Social workers went to the hospital; Mother had been discharged and Minor was still in the NICU.  Minor was still experiencing withdrawal symptoms including high blood pressure, high temperature, high-pitched crying and tremors.  Parents had not visited Minor in five days.  On June 3, 2024, Minor was ready to be discharged from the hospital.  MGM had been visiting with Minor at the hospital.  Minor was placed in a

---

[3] MGM filed her opening brief with a limited record as she is a relative and not a parent entitled to inspect the juvenile case file.  (See § 827.)  CFS requested that this court take judicial notice of the detention report, detention warrant, minute order from the detention hearing, the jurisdiction/disposition report and an addendum report.  We have granted the request.

foster home. Mother had two other children. Their father, A.B., had sole physical and legal custody.

MGM informed a social worker with CFS that she had not seen Mother during her pregnancy except for one time two weeks prior to her giving birth to Minor. Mother did not live with MGM. MGM had been trying to get Mother placed into a drug treatment program. MGM was applying for conservatorship of Mother. Mother did not have custody of her other children due to her drug use. Mother reported she used fentanyl and methamphetamine during her pregnancy and saw a doctor only one time during the pregnancy. Mother wanted Minor to go to MGM or the paternal grandmother. Mother reported that she was homeless.

MGM provided transportation for Minor's siblings to appointments and cared for them on occasion. A.B. had both siblings in his home and did not want them to be involved with Mother. Mother had no prior child welfare history or criminal record. Results were pending for emergency placement of Minor with MGM.

CFS filed a section 300 petition, which has not been made part of the record, but the allegations appear in the record (petition). It was alleged against Parents, pursuant to section 300, subdivision (b), that Mother had an untreated substance abuse problem, Mother and Minor tested positive for fentanyl and methamphetamine at birth, Mother should have known that Father had an untreated mental health problem that impacted Minor's safety, Father should have known about Mother's untreated substance abuse problem, and Father suffered from untreated substance abuse and mental health problems. Under section 300, subdivision (g), it was alleged that Parents had left Minor

4

without any provisions for her care. A detention hearing was held on June 6, 2024. Only A.B. is listed as being present at the hearing. Minor was detained and placed in a foster home.

B.     JURISDICTION/DISPOSITION REPORT

The jurisdiction/disposition report was filed on June 24, 2024. It was recommended that Minor be detained from Mother's custody; Mother was to be granted six months of reunification services. Father would be given reunification services if he completed a paternity test. Mother was not present at the detention hearing and could not be notified of the jurisdiction/disposition hearing because her whereabouts were unknown. CFS was requesting a continuance of the jurisdiction/disposition hearing in order for Father to complete paternity testing. The prognosis of reunification for Parents was "poor." It was necessary to remove Minor from their custody. CFS had not been able to speak with Father or Mother during the reporting period. Mother had texted CFS and a meeting was scheduled but she did not show up for the appointment.

CFS reported that MGM was interested in placement of Minor. It was stated by the social worker, "On June 3, 2024, the undersigned was informed . . . that placement assessment [with MGM] was not approved due to CFS history and admitting to historical domestic violence in the home." The social worker reported meeting with MGM. The social worker reported the MGM appeared to minimize Mother's substance use. MGM stated Mother was only using substances because of Father. CFS concluded that MGM's home was not an appropriate placement for Minor and it was not in Minor's best interests to be placed with MGM. Parents had no visits with Minor during the reporting period.

The first jurisdiction/disposition hearing took place on June 27, 2024.  Parents were not present but had been in contact with CFS.  The juvenile court intended to continue the hearing for paternity testing.  The juvenile court then inquired of MGM if there was any Indian ancestry.  MGM denied any Indian ancestry.  The juvenile court brought in counsel for Parents to be appointed only as a special appearance.  The juvenile court sought to have the attorneys try to contact Parents.  The juvenile court advised counsel they would be relieved if Parents could not be contacted.

After counsel was appointed, MGM apparently got the attention of the juvenile court.  The juvenile court inquired if she had a question, but admonished her that it was not allowed to answer questions.  MGM stated, "[Father]—he's the one who introduced my daughter to drugs."  The juvenile court responded, "Okay.  Yeah."  MGM began to speak but the juvenile court interrupted her and stated, "You need to talk to the worker about that.  But how about authority for relative visits for the grandma.  [¶]  Grandma, just—did we get a relative form?"  MGM responded, "The police—."  The juvenile court responded, "Please, stop talking.  [¶]  If we can get a relative family find form, you'll fill that out.  Everything you're trying to tell me, just talk to the worker and let them know. I will let you have visits too."  MGM responded, "Thank you."

C.    MGM'S FIRST SECTION 388 PETITION

On July 5, 2024, MGM filed a section 388 petition.  MGM sought legal custody of Minor.  She was the only relative who could provide care for Minor.  MGM provided several declarations in support of the section 388 petition.  She recounted that Mother had a good childhood and married A.B. after high school.  She had two children with A.B.

6

Mother had normal pregnancies and took care of her children. In February 2023, Mother met Father. Mother left with Father—abandoning her two children—and left A.B. to care for them. Mother came to MGM's house one time in November 2023 but quickly left again with Father. In May 2024, Mother arrived at her home; Mother was pregnant. MGM took Mother to the doctor and there was no mention that Mother was using drugs. Mother again disappeared with Father and gave birth several days later. The first time MGM heard about Mother using drugs was at the hospital.

MGM had visited Minor every day in the hospital. MGM was informed by CFS that she did not pass the background check for placement of Minor. MGM stated that her arrest record, which brought her to the attention of CFS, had been ordered destroyed as it was 30 years old, and the domestic violence was never proven. The investigation by child services was seven years prior and there were no further investigations. MGM had filed for conservatorship of Mother. MGM provided a minute order from a court hearing held on November 15, 2023, ordering the destruction of records, presumably her prior arrest record. MGM also attached character letters.

The juvenile court denied the section 388 petition on July 5, 2024, concluding that it did not state new evidence or change of circumstances, and the proposed change of order was not in Minor's best interest.

On July 15, 2024, MGM filed a new declaration. MGM insisted that the social worker who spoke with her omitted her statements in her report. MGM stated that she was the victim of domestic violence, and the perpetrator was removed from her home. MGM had no contact with Mother during Mother's pregnancy and had no knowledge of

7

her drug use. MGM insisted she did not "minimize" Mother's drug use. MGM was entitled to preferential placement of Minor as her grandmother. MGM accused CFS of the tort of intentional infliction of emotional distress on Minor and that she would have lasting trauma.

### D. JURISDICTION/DISPOSITION HEARING

An addendum to the jurisdiction/disposition report was filed on August 7, 2024. Parents had not contacted CFS, Father had not made himself available for a paternity test, and Parents' whereabouts were unknown.

CFS also reported that MGM claimed to have filed for conservatorship over Mother. MGM also claimed to have filed a petition for legal guardianship of Minor. MGM claimed that the "court" granted her legal guardianship over Minor on June 27, 2024, and demanded that Minor be turned over to her by CFS. It does not appear the documents were provided to CFS, and Minor was not placed with MGM. MGM had a visit with Minor on July 30, 2024.

At the beginning of the hearing on August 7, 2024, attorneys for both Parents asked to be and were relieved as counsel. They had tried to contact Parents but had been unsuccessful. CFS submitted on its reports. CFS was recommending reunification services for Mother but none for Father, who had not completed the required paternity test. Minor's counsel agreed with the recommendation. The juvenile court stated it had read the reports and sustained the section 300, subdivision (b) and (g) allegations in the petition.

8

As for MGM, CFS requested that she not be considered for placement of Minor. The juvenile court inquired of Minor's counsel who submitted on the recommendation from CFS. The juvenile court noted that MGM had filed a section 388 petition and that it had been denied. The juvenile court then considered placement of Minor with MGM within the meaning of section 361.3. It stated that the primary concern was what was in Minor's best interests. The juvenile court had to consider the good moral character of the relative, the duration of the relationship between the child and the relative, the ability to provide a safe and secure environment for the child, the ability to be able to care for the child, provide a home and necessities, and protect the child from their own parent. The juvenile court stated, "When you go to 'safe, secure, stable environment,' and then, 'Protect the child from Parents,' that's one of the issues I have based on the evaluation. Even having read [MGM]'s statements, [MGM i]s not protective and does not recognize the risk Mother poses, and she puts it all on the alleged father, and, therefore, she wouldn't be able to protect the child."

The juvenile court then considered that MGM had a history with child services and a domestic violence history, which impacted her ability to provide a safe and secure environment for Minor. The juvenile court concluded, "[A]t this time, the Court will agree, and make its own independent finding, but I agree with [CFS]'s findings pursuant to [section] 361.3. Overall, it is not in the child's best interest." The juvenile court noted it considered that Parents wanted Minor placed with MGM. The juvenile court stated, "I don't have anything about the moral character, other than some past history, but it's not enough for me to say either way. But I think I have enough information to indicate that

9

I'm not sure the home is safe enough for the child. One, because of MGM's stance on the case, and MGM's history."

MGM was granted visitation with Minor. The juvenile court addressed MGM as follows: "All right. [MGM], I'm going to give you visits, but I'm not going to have the child placed there for the reasons I said, but you can keep working on things and just try to develop a good relationship with the child. Okay? All right. Good luck." MGM stated, "Can I—" She was cut off by the juvenile court. The juvenile court adopted the findings and orders.

### E. MGM'S SECOND 388 PETITION

On August 9, 2024, after the jurisdiction/disposition hearing, MGM filed a second section 388 petition. MGM again contended that as Minor's grandmother, she should have Minor placed with her. MGM provided an additional declaration. It was nearly identical to the declaration filed on July 15, 2024. She submitted more character letters. She again submitted the minute order from proceedings in which her prior arrest was ordered sealed and destroyed.

The second section 388 petition was denied without a hearing. The juvenile court found that the second section 388 petition provided no new evidence or change of circumstances, and the proposed change in order did not promote Minor's best interests. The juvenile court also noted that it had already denied the first section 388 petition.

MGM filed a notice of appeal on August 29, 2024, from the June 27, 2024, July 5, 2024 and August 7, 2024, rulings.

10

MGM raises no issues on appeal regarding the orders issued on June 27, 2024, (continuance of the jurisdiction/disposition hearing) and July 5, 2024, (summary denial of the section 388 petition) so we deem the appeal of these orders to be abandoned. (See *In re Sara H.* (1997) 52 Cal.App.198, 202.)

## DISCUSSION

### A. RIGHT TO PRESENT EVIDENCE AT JURISDICTION/DISPOSITION HEARING

MGM contends the juvenile court erred by denying her the opportunity to present evidence and be heard in court regarding placement of Minor with her at the jurisdiction/disposition hearing. MGM insists, relying on *Charles S. v. Superior Court* (1985) 168 Cal.App.3d 151 (*Charles S.*) and California Rules of Court, rule 5.534(b), that she had a right to participate in the dependency proceedings as a relative interested in placement of Minor. She contends that her exclusion from participating in the hearing is not subject to harmless error analysis. CFS does not dispute that MGM has standing to raise this issue but contends the juvenile court properly found that placement of Minor with MGM was not in Minor's best interests.

"At the outset of a dependency case, section 361.3, subdivision (a), requires [social services agencies] and the court to give 'preferential consideration' to a relative's request for placement, which means 'the relative seeking placement shall be the first placement to be considered and investigated.' " (*Amber G. v. Superior Court* (2022) 86 Cal.App.5th 465, 490; § 361.3, subd. (a).)

11

The factors the juvenile court shall consider in assessing a relative for placement include the best interests of the child, the wishes of the parent if appropriate, placement with siblings, the good moral character of the relative, whether the relative has a history of violent criminal acts and the duration of the relationship between the child and the relative. (§ 361.3, subds. (a)(1)-(a)(6).) In addition, the relative must be able to provide a safe and stable environment for the child, be able to exercise proper and effective care of the child, provide a home and necessities for the child, protect the child from the parents, facilitate court-ordered reunification efforts with the parents, facilitate visitation with other relatives, and facilitate implementation of the case plan. (§ 361.3, subds. (a)(7)(A)-(a)(7)(G).) Accordingly, section 361.3 "expresse[s] a command that relatives be assessed and considered favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child." (*In re Stephanie M*. (1994) 7 Cal.4th 295, 320.)

"The relative placement preference . . . is not a relative placement *guarantee*." (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.) "Custody determinations in dependency proceedings are 'committed to the sound discretion of the juvenile court,' and such rulings 'should not be disturbed on appeal unless an abuse of discretion is clearly established.' [Citation.] We will not disturb a custody determination ' " 'unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*In re J.M.* (2020) 44 Cal.App.5th 707, 718; see also *In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) We find no abuse of the juvenile court's discretion in denying placement of Minor with MGM.

The juvenile court was well aware of its discretion under section 361.3 in assessing MGM for placement. The juvenile court outlined all of the relevant factors in considering whether Minor should be placed with MGM. The juvenile court found that MGM was not protective as she did not "recognize the risk Mother poses, and she puts it all on the alleged father, and, therefore, she wouldn't be able to protect the child." MGM had stated in open court Father was to blame for Mother's substance abuse and advised CFS that Father was the reason for Mother's drug use. The juvenile court further felt that placement was not appropriate based on some history with child services, and the fact that MGM had some domestic violence history. Although MGM minimized this history, she did not deny the history existed. The juvenile court did not abuse its discretion by concluding that it was not in Minor's best interests to be placed with MGM.

MGM contends that *Charles S.* and California Rules of Court, rule 5.534(b), support her claim that, although she had not been made a de facto parent, she was entitled to present evidence at the jurisdiction/disposition hearing. In *Charles S.*, *supra*, 168 Cal.App.3d 151, the grandfather of the child sought review of an order by the juvenile court that he could not participate in a permanency planning hearing regarding the future status of his grandson. The grandfather contended he was precluded from presenting evidence that was "vital to a determination of the child's best interest." (*Id.* at pp. 153-155.) The appellate court found that the grandfather was entitled to participate. It reasoned, "[Grandfather] informs us he attended all hearings pertaining to his grandson. Even if, as the D[epartment of] S[ocial] S[ervices] contends, he did not formally participate at all of those hearings, his presence alone is indicative of a desire to be

13

involved in and informed of any plans made with respect to the child's future. To that end, he spent the entire day in court on March 26th waiting for an opportunity to participate. In contrast, [the child]'s foster parents, who clearly had standing to participate, did not testify nor were they even present at the hearing. This suggests to us [grandfather's] participation should have been permitted. Notwithstanding the limited nature of his weekly contact with the child, if what he has to say turns out not to be beneficial to a determination of the child's best interests, the trial court will soon know. And even in that event, we can perceive of no manner in which his participation could hamper the proceeding." (*Id*. at p. 156, fn. omitted.) The appellate court noted that despite the grandfather already being evaluated and rejected as appropriate placement for his grandson, "this [had] no bearing on his right to participate at the permanency planning hearing" where it was possible a decision on placement would mean he "may be foreclosed permanently from *any* contact" with his grandson. (*Id.* at pp. 156-157.)

California Rules of Court, rule 5.534(b)(1)(A) and 5.534(b)(1)(B) provide that relatives, "[o]n a sufficient showing" may be permitted to be present at a disposition hearing and "Address the court." The relative also has the right to submit information about the child to the court at any time. (Cal. Rules of Court, rule 5.534(b)(2).)

This case differs from *Charles S.* in that MGM was seeking to participate in the relative placement proceedings, not the permanency proceedings, in which it was possible that the grandfather in that case would have no further contact with his grandson. MGM has not provided any legal authority that the finding in *Charles S.* applies to findings pursuant to section 361.3. Additionally, in this case, MGM presented written

14

evidence to the court by way of a section 388 petition. MGM provided a declaration in which she explained her prior criminal history and involvement with CFS. The juvenile court indicated it had reviewed the section 388 petition and denied it without a hearing. A hearing on a section 388 petition need only be held if the proposed change "is in the best interests of the child." (§ 388, subd. (a)(2); *In re Jasmon O.* (1994) 8 Cal.4th 398, 415 [" '[I]f the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing' "].) MGM does not argue on appeal that the section 388 petition was improperly denied. As noted by CFS, the section 388 petition filed by MGM could have been dismissed for lack of jurisdiction by the juvenile court as section 388 only allows such petition if the juvenile court has taken jurisdiction over the child, which had not occurred when the section 388 petition was filed by MGM. As such, the juvenile court necessarily considered whether placement with MGM was in Minor's best interests in light of the evidence presented by MGM. This equally applies to California Rules of Court, rule 5.534 in that MGM did not make a "sufficient showing" of a need to address the court.

In her reply brief, MGM insists that live testimony was necessary in order for the juvenile court to properly assess her credibility, insisting that the declarations provided to the juvenile court were not signed under penalty of perjury and were largely ignored by the juvenile court. Initially, we must assume the juvenile court properly reviewed all of the evidence in the section 388 petitions in denying without a hearing. Moreover, the juvenile court stated it had reviewed MGM's "statements" in denying the section 388 petition. MGM insists the juvenile court could better assess her credibility with live

15

testimony. However, the juvenile court already found that a hearing was not necessary based on this same evidence.

MGM has failed to show that her testimony or evidence would have impacted the juvenile court's decision to deny her placement. The testimony that she proffers on appeal was in her declarations and letters included with the section 388 petition, which the juvenile court reviewed. Accordingly, even had MGM been given the opportunity to participate in the hearing, the results would be the same. (See *In re Joseph T.*, *supra*, 163 Cal.App.4th at p. 798 [the juvenile court's failure to afford relative placement preference to aunt and failure to state reasons on the record were harmless errors]; see also *In re N.J.* (2024) 104 Cal.App.5th 96, 127-128 [relative placement preference subject to harmless error analysis].)

B.    STANDING TO RAISE ISSUE OF MOTHER'S APPOINTMENT OR RELIEVING OF COUNSEL

MGM also contends the juvenile court prejudicially erred by relieving Mother's counsel at the start of the jurisdiction/disposition hearing without cause or notice to Mother. MGM insists she has standing to appeal this issue because she and Mother had a "legally cognizable interest in having [Minor] placed with [MGM]." MGM insists the fact that Mother's counsel was unable to contact Mother was not sufficient cause to relieve counsel. CFS contends that MGM does not have standing to appeal, and even if she did, the juvenile court only appointed counsel for a special appearance and did not have to appoint counsel based on Mother never appearing in court.

16

"An appellant cannot urge errors which affect only another party who does not appeal." (*In re Vanessa Z.* (1994) 23 Cal.App.4th 258, 261.) The party must be " 'aggrieved' " in order to have standing on appeal. (*In re Aaron R.* (2005) 130 Cal.App.4th 697, 703.) "An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.] These rules apply with full force to appeals from dependency proceedings." (*In re K.C.* (2011) 52 Cal.4th 231, 236 (*K.C.*).)

MGM insists that her interests aligned with Mother in that the juvenile court stated that the "parents would want the child placed there." However, MGM's interest is merely a "remote consequence" of appointment of counsel, as she had no rights as to the care and custody of Minor. (*K.C.*, *supra*, 52 Cal.4th p. 236.)

MGM relies on *In re Patricia E.* (1985) 174 Cal.App.3d 1 to support her claim that her and Mother's interests were "intertwined," giving her standing to raise the issue on appeal. In *Patricia E.*, the father raised on appeal the failure of the juvenile court to appoint independent counsel to represent his child; counsel that was appointed represented both the child services department and the child. It found the father had standing to raise the issue on appeal, finding "We answer in the affirmative because independent representation of the daughter's interests impacts upon the father's interest in the parent-child relationship. Where the interests of two parties interweave, either party has standing to litigate issues that have a impact upon the related interests. This is a matter of first party standing. [Citation.] At stake in a dependency proceeding is both the

17

child's welfare and the parent-child relationship. [Citation.] The two considerations are intertwined. The [child services] department took the position that [the child] should be retained in a foster home on grounds that her father's home continued to be unfit. That position may not have been taken by a counsel freed of the necessity to represent the department. There are grounds to support [the child]'s return to her father. . . . Thus, the father has standing to raise the interests of the child to independent counsel." (*Id.* at pp. 6-7, fn. omitted.)

This case differs in that the father's parent/child relationship was at issue in *Patricia E.* The father in *Patricia E.* had a compelling interest in the care, custody and management of his child's care in seeking to have placement of his child with him. Here, MGM was seeking placement of Minor, which she claims would facilitate reunification of Mother with Minor. However, MGM did not have parental rights similar to Mother in the care and custody of Minor. MGM's desire to have placement of Minor with MGM was a "remote consequence" of appointment of counsel to Mother not involving a right or interest possessed by MGM that was "injuriously affected by the decision in an immediate and substantial way." (*K.C.*, *supra*, 52 Cal.4th at p. 236.) MGM cannot raise the claim on appeal that the juvenile court erred by either failing to appoint or by relieving counsel for Mother.

## DISPOSITION

The judgment is affirmed.  The appeal from the June 27, 2024, and July 5, 2024, orders is dismissed as abandoned.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.